It's their cross appeals here. There are numbers 24-3284 and 24-3358. Good morning, your honors. Morning. I would like to reserve four minutes for rebuttal, please. That'll be granted. Thank you, and may it please the court. Stanley Penikowski for the appellant, Nike Inc. The district court's exceptional case ruling is based on legal errors and clear factual errors. The ruling is therefore, by definition, an abuse of discretion under the Supreme Court's decision in Coon and this court's decision in Wise. And that ruling should be reversed. Starting with the first prong of the Supreme Court's octane fitness test, your honors, this court explained in Fairwind Sailing that the district court must decide whether there was an unusual discrepancy in the merits of the party's litigating positions, taking into account the totality of the circumstances. The district court here, your honors, failed to apply this legal standard in at least two ways. First, the court considered only the substantive strength of Lontex's position and ignored the relative strength of Nike's position and the closeness of the case. The district court thus ignored this court's ruling in the first appeal in this case, that the evidence on likelihood of confusion did not strongly support either party. That's at 107F4 at 155. And that ruling is significant, your honors, because a trademark plaintiff needs to establish a likelihood of confusion or else that trademark plaintiff cannot be the prevailing party in the case. Therefore, the strength of Lontex's position could not exceed the weakest link in its case. And this court said, after a thorough analysis of the lat factors for likelihood of confusion, that those factors do not strongly support either Lontex or Nike. The district court on remand also ignored its own prior ruling on post-trial motions that Lontex's evidence on likelihood of confusion was not overwhelming. That's at page A822 of the record, your honors. And the district court also ignored its own summary judgment determination at page A478 that Nike had presented strong legal arguments on likelihood of confusion. And its determination at page A483 that Nike had presented important legal arguments on its fair use defense. Why couldn't the district court revisit those findings? Your honor, the district court could not revisit those findings for two reasons. One, because the district court was bound by the determinations that this court had made in the first appeal about the closest of the case. Let's pause there. Yes, your honor. What is your legal theory of that binding effect that you're talking about? Your honor, the legal theory of the binding effect differs between the two prongs of opting fitness. And just focusing on the first, the unusual discrepancy in the merits is that this court, in ruling that the district court had properly denied Nike's motion for judgment as a matter of law, explained its reasoning in depth. And its reasoning was based on the fact that the jury was not compelled to find in Lontex's favor, but it was a permissible inference, even though the lot factors did not strongly support Lontex. And not only, your honors, is that determination binding on the district court, it also comports with everything the district court had consistently said. Is it binding in a sense of the mandate rule? Is it binding in the sense of law of the case? I'm trying to narrow in on what the binding part is. It's true. Didn't we vacate it? I mean, isn't it a clean slate once we vacate? So, your honor, the court did vacate the exceptional case ruling. But it's not an entirely clean slate, because as this court held in VI Conservation Society, the district court must apply not only the letter of the mandate, but also the spirit of the mandate. And we also have here the law of the case doctrine, where you need to take into account not just the literal holding of the Third Circuit's, this court's opinion, but also the additional determinations that were made along the way. And so, your honor, again, the argument differs slightly between the two prongs. On substantive strength, you have not only this court's determinations about likelihood of confusion, not strongly supporting law and tax, about the willfulness issue being subject to competing inferences, neither of which was compulsory. You also have the district court's own prior contemporaneous determinations establishing closeness. And in the district court's post-remand decision, your honor, unlike with litigation conduct, the district court simply ignored all of these prior rulings. There was no indication in the district court's post-remand decision that it was reconsidering and providing a reasoned different view on the unusual discrepancy prong. Rather, what the district court did, contrary to the binding legal standard from Fairwind Sailing, is that it completely ignored and excised from the analysis anything about the strength of Nike's defenses, the weakness of Lantex's damages case, which this court made clear at page 157 of the prior opinion is relevant to the exceptional case determination. And the district court also ignored all of the significant victories that Nike had achieved along the way in the case, including the dismissal of Lantex's counterfeiting claims and accompanying demand for statutory damages, which this court affirmed on appeal, as well as the district court's denial of disgorgement, which this court also affirmed on appeal. So the failure to apply the correct legal standard alone, Your Honors, is reason enough to vacate the district court's decision, but also there need not be a remand on the unusual discrepancy in the merits prong because we have all of the determinations from this court and the district court that even under the deferential abuse of discretion standard of review, you could not reasonably reach the conclusion on this record with the determinations from this court and the district court that this is what the Supreme Court called the rare or uncommon case, where... I mean, I think there are some aspects of this record that someone could consider to be unique. One is the kill comment. Do you want to address that? Yes, Your Honor. So the problem with the district court's findings on the allegation that outside pre-litigation counsel for Nike said that Nike would kill Lawn Texas business is that that statement was uncorroborated, untested, and excluded a trial. The district, tell me if I have this wrong, the district judge put the witness on the stand and had him, and I think it was Lawn Texas principal, right? Yes, Your Honor. And had him explain what counsel said to him. So I mean, it's sworn testimony. So Your Honor, that was not trial testimony before the jury. This is a... I get it, but you say uncorroborated, I guess, but I mean, the witness was sworn in front of the district judge and the judge heard the testimony. So you made a reference to pre-litigation conduct. I think it'd be helpful if you could address that and if you could address rule 408 in this setting. Yes, so Your Honor, this offer of proof was at pages A643 to 651 of the appendix and the district court at age 20 in its post-reband decision described this offer of proof as being a documented statement from a Nike official. Your Honor, those are clear factual errors because the offer of proof itself shows that the statement was not documented. It was rather the uncorroborated testimony of Mr. Nathan and the district court specifically prohibited Nike's counsel from cross-examining Mr. Nathan on it. The district court made clear that all we were trying to do was to elicit what Mr. Nathan would say in a... But talk to me about the relevance of pre-litigation versus in-litigation conduct, the assessment of attorney's fees and the rule 408 point that I think weighed on the district court's mind in excluding the evidence at trial. How should we think about rule 408 here? Yes, Your Honor. So I think that rule 408 is important here because the rules of evidence do bind the district court even in making its exceptional case determination. So while the first basis on which the district court excluded the testimony rule 403 obviously has force in a jury trial that it wouldn't have to the same extent for the district court's determination, the policies behind federal rule of evidence 408 apply equally to the jury trial and the exceptional case determination because this isn't just about avoiding prejudicing or confusing the jury, it's also about protecting the sanctity of settlement discussions and not having things improperly used against parties later. And the relevance, Your Honor, of the fact that the alleged speaker was Nike's pre-litigation counsel is because the district court itself at pages A734 to 735 of the record found it significant to its decision to exclude that the statement wasn't from a Nike official but was rather from outside counsel that Nike had retained in 2016 for some pre-litigation negotiations with Lantex and that influenced the district court's decision that it wouldn't allow this uncorroborated, undocumented statement to go before the jury. Is there any dispute that the declarant, the person who I will say is alleged to have made a kill comment was counsel for Nike at the time? Your Honor, there is no dispute that that individual was counsel for Nike and so we're not arguing that statements of outside counsel retained for pre-litigation purposes can never be relevant, but the district court thought that context was relevant and it's part of the totality of the circumstances. And because, Your Honor, the offer of proof was excluded from the trial, Nike then did not have reason or opportunity to present a rebuttal witness even though docket number 331 in the district court record shows that the outside litigation counsel was on Nike's witness list and would have been available to testify and counter those allegations if they had been admitted. And I see that my time has expired, Your Honors, but I'm of course happy to answer further questions. Can you also address the Nike's position on trademark ownership and why that wasn't just an example of knock down, drag out, big law litigation? Yes, Your Honor. So that was at page 403 to 404 of the record. And again, the district court's factual findings here were clearly erroneous because the district court said that it had to press Nike's counsel to acknowledge that Lantex owned the trademark. That's not what happened in that page of transcript. Nike's counsel made clear at least four times, we are disputing, yes. We gotta finish up here and I apologize, but I read the transcript. What is the legal strategy behind that that doesn't just make it frivolous, vexatious litigation in the context of everything that was going on in the case at that point? Yes, Your Honor. So the reason why it is not frivolous or vexatious is because under the Lanham Act, the trademark defendant has an opportunity to prove that the registration is invalid. And two of the bases on what you can prove that the registration is invalid is one, fraud on the PTO and two, abandonment. And Nike asserted both of those defenses and counterclaims. It pursued the abandonment claim all the way up through the jury verdict. And the consequences, Your Honor, of a finding of fraud on the PTO or abandonment is that the putative trademark plaintiff is not the rightful owner of the trademark. And therefore, it was proper for Nike to contest Lantex's ownership via those defenses. Thank you. Thank you, counsel. Thank you, Your Honors. We'll hear from your friend. Misha Zaitlin for Lantex. The district court followed this court's instructions, eschewed the broad policy considerations that this court found problematic in the first round of this appeal, and explained that under the facts of all the circumstances here, this was an exceptional case. This is a traditional discretionary decision that this court should not second guess. Now, let me jump right away to the kill comment, which I think there's some additional color that I think will be helpful to Your Honor's questions. There is no dispute that the individual that my client testified under oath said that Nike would kill his company, and then also testified to that in his deposition that he was Nike's ISI counsel. They also didn't dispute that he made these comments that he was going to kill. Why is this pre-litigation exchange, and I don't know if there's no dispute, but I'm not gonna quibble on that. Why is this pre-litigation exchange relevant to attorney's fees during the litigation? Well, because this was this counsel saying, if you sue us, we will kill you with litigation. He didn't litigate the case, right? Sorry, Your Honor? When you say this counsel, it was an attorney for Nike who did not litigate this case. But he wasn't saying, I will personally make sure that I will be in court and litigate and do it. He said, Nike, this giant behemoth will kill you, and there's a special master found, factual finding unchallenged, with litigation costs. And then all of the other misconduct that the judge talked about in his finding of an exceptional case involved them trying to kill us with litigation costs. Now they quibble with one cost or the other and one tactic or the other, but if there's anything more core to a judge's discretion that sat through the trial, is to talk about what he saw Nike doing in all these various things, including hanging over our head this frankly ridiculous theory that my client defrauded the PTO to try to hang over our head that they were gonna try to cancel our uncontested trade market just to unceremoniously drop it in trial. And you can see them unceremoniously dropping it at docket 371 at four. Now- When we think about how the district court weighed this kill comment, and you're making reference to it, I think, there's the, at least in the backdrop of this case, is that there's a difference in resources between the two parties. And there's this lurking issue of litigation funding and how that bears on whether there is actually a difference in resources between these two parties. Can you shed any light on that for us? Are you willing to tell us why there's litigation funding? Can you explain to us why that's not relevant? Why the district court shouldn't have been thinking about that at the attorney's fees phase? Well, a couple of things, your honor. There is litigation funding. They attempted to get discovery on litigation funding. The district court said that was not relevant. They did not appeal, even though they appealed a bunch of other stuff the last time around. Say candidly, the litigation funding, they get money in the front end. So the taking away the attorney's fees is not gonna, that's gonna screw my client, with apologies with my language. Now, just a little bit more on the, to comment if I may, they've made a point and they made it again today that they didn't get a chance to test this. Well, they deposed my client on this, that they cited the deposition in their motion in limine. So they certainly got to question them on it. If they had any inkling that their own lawyer didn't threaten to kill us, the special master relied on this comment in her report. They could have, if they had any reason to dispute that this comment happened, they surely would have submitted a declaration from Chris Kindle saying that he didn't say this. I took us down a kill rabbit hole here. What else are you hanging your hat on for why this case was exceptional? Yeah, so the, on the substance of strength, it was the district court, how it permissibly looked at the fact that the jury found that this conduct was willful. Now my friend, I think misinterprets Octane Fitness as adopting some sort of wooden rule that the underlying misconduct by the party that was jury was found, somehow can't trigger substance of strength in the judge's discretion. That's clearly false. In this court's decision in Securicom, this court says, quote, couple conduct can render a case exceptional. And it says couple conduct is usually based on infringing acts. Octane Fitness comes in after that and in fact expands the universe of circumstances where a judge has the discretion to award fees. It doesn't shrink it. And then you see in Fairwind interpreting Octane Fitness, the court, this court says blame worthiness is no longer a threshold issue, but it way well be proper consideration as in the two inquiries within Octane Fitness. So here we had the jury find that Nike engaged not only in trademark infringement, but in willful trademark infringement. And the special master here explained what that was. What the willful infringement here was is that Nike knew, knew they were infringing our incontestable trademark and they just didn't care. When I was at the podium here a couple of years ago, I said, imagine if they had gotten a similar letter, not from little old law and tax, but from Reebok or from Adidas said, we have a trademark for cool compression and you're infringing it. And imagine if their lawyer, their in-house lawyer, Nike said, you better cut this out. Would it have taken Nike two years to get the cool compression out of all the tech sheets, out of all the key tech sheets that are telling Dick's Sporting Goods? I got you on willfulness. Yes. But you also concede it's a lot of other things that we have to look at now, right? I mean, that may be one factor, but it's not this positive. It is true that the district court cannot say that willfulness automatically means exceptional case. But district court in its broad discretion, it can be a sufficient basis. Now, that wasn't the only thing that they hear, lie on here, but we have the kill comment and the other things, but Myers-Briggs submission consistent with all the case law that we cited, including from the federal circuit, that it is a sufficient, but not that it can be a sufficient condition if the judge in his discretion explains what he was doing. And I think that's the best way to read this court's decision last time. Well, let me ask you a question about that. There was a lot of discussion about the motion for summary judgment and motion for sanctions and the number and types of discovery disputes there. Can you show me the record where the court actually makes a finding that these things were unreasonable? It seems like both sides were taking that language and looking at it and saying, this means this, but is there a finding in here that, again, the motion for summary judgment, motion for sanctions, where it actually finds these were unreasonable? Because that's where we, that's what we need, right? No, what the court needs to do is on the litigation misconduct point, it's to say that the case itself was litigated improperly. And what the court did is he didn't look at these incidents in isolation. He looked at this together. I'm asking you something pretty specific. Unreasonableness is a standard. You have to agree, right? No, the standard, Your Honor, is an exceptional case. And the way that the case was litigated. Unreasonable litigation, unreasonable litigation conduct. That is something that you have to deal with, right? On that part of the inquiry. But I will say that the way that I would understand Judge's opinion is that he looked at the entire case together, not them in isolation, beginning with them saying, we're gonna kill you with litigation costs. Then they make the discovery at the beginning so difficult that we had to come to the court and said, please give us the special master. Once we got the special master, they are refusing to produce witnesses that can answer basic questions about how their employees are selling cool compression things. They're filing- How long did it take Nike to cure that? The entire, what the judge said is it took six months. And we had to file another motion to compel, a second motion to compel. While the judge was considering whether to sanction them for that, they file a sanctioned motion against us for just doing some fact gathering, which the judge easily rejected. Then, on the summary judgment motion, that was overbroad. I agree that that wouldn't be a standalone. But even, let's take the number and type of discovery disputes. It did, at point, the court did acknowledge, hey, you know what? I mean, we're not faulting them for pressing what they think are their rights. It's just a little confusing to figure out what did he actually think was unreasonable versus not. The way that I would read his opinion of finding exceptional case is that Nike was taking every advantage to make this as difficult, honest as possible. While each individual thing may not, in itself, make the case exceptional. When you look at it in the context of you begin with the kill comment, and you have these five other things, together, you are in the heartland of a judge's discretion. This case went on for a long time. We got some people who were here trying to counsel, I wasn't there, you all wasn't there. This is exactly the kind of thing where a judge's discretion is at its highest ebb, the way that the litigation actually flowed. Also, returning just, if I may, quickly to the willfulness point. What this court said in its first opinion, where I argued a lot about willfulness, standing from this podium, this court didn't say willfulness is not gonna be enough. What the court said is, the judge mentioned willfulness, but he was really focusing on these improper policy considerations. Judge on remand, tell us what the import of willfulness is. And he told the court, what my friends are arguing here would be an egregious bait and switch on Judge Bailson and on the parties, to say that, oh yeah, we already made enough findings that this case was close, that nevermind, there's no point, and there was no point in the remand. The court said, we're unhappy about the policy reasons the court gave, and give attorneys fees, try again. This is exactly what he was expected to do, and it should be affirmed within his broad discretion. Now, if I may talk about the cross appeal for a couple of minutes, the delay rule that this court adopted in Lonnie and a lot of other courts have adopted, is all about putting the cost of delay of payment on the party that has to pay the fees, not the one, the party that's denied the fees. Here, because the district court in our submission, misread one sentence in Lonnie, we're put in a position that we were out $5 million for two and a half years, and all we got is $200,000 in interest. There's no finding that that was, that $200,000 was somehow sufficient under the underlying rationale of the delay rule, which is that the cost of delay should be put upon the losing party, not on the prevailing party. Well, I mean, you were the one who just talked about granting the court a lot of discretion here. Yes, Your Honor, and if the court had said, in its opinion below, in my discretion, I believe that the $200,000 for two and a half years is sufficient under the delay rule, I think we might not even have taken an appeal. But the court didn't say that. He said, I read Lonnie and that sentence in Lonnie that says that it's the date of the filing of the application, as essentially deciding this issue. I gotta say, if you're resting this part of the case on things left unsaid by the district court, you're in trouble on the front end of this appeal. Your Honor, I'm not resting on that at all. Lonnie has this sentence that we're talking about. Why, and if we have to interpret and maybe think about what that sentence means in this context, why wasn't market interest a reasonable application of the delay rule in these specific circumstances? Because it was just so low. And it happened to be that in 2022, the interest rates were so low. I mean, if the interest rates were reasonable throughout the period, maybe the money would match up. But it's just an unfortunate circumstance that the district court should have had the discretion to consider that the interest rates in 2022 just happened to be so low. And if the district court had said, in my discretion, I'm looking at this, this is what's fair. Again, I don't think we'd have much of an appeal. But he didn't say that. He said, I'm bound by that sentence in Lonnie. What we're saying is that that's just an overreading of that sentence in Lonnie. And the court should have had the discretion to say the interest rate of 1.4, whatever I had in somebody looking at this. I mean, I was actually quite jarred. I thought it might've been some error that you only got $200,000 interest for two and a half years of not having $5 million. And it's just a happenstance that the interest rate in 2022 is so low. And that's certainly nothing in Lonnie, I think, pre-decided this unusual circumstance where you have this long delay, you have a remand such that, look, and I think that under the district courts and Nike's interpretation of Lonnie, if the district court, as a case management decision has said, rather than submit the new fees for the remand, resubmit everything just as an administrative matter. Give me a new, renewed fee application like happened in that Lynn case out of New Jersey that they cite, that if we had administratively submitted all of the bills together and he'd done a new one, then the 2024 rates apply. But because he just reinstated the old amount and did a new one, we're out $1.7 million. That's really, I think, not the best way to read the delay rule, which is, again, supposed to protect the party that prevailed. I just had one other question for you. One of the considerations in Fairwind Sailing was considering exceptional discrepancy between the parties litigating positions. Was it complete? In other words, doesn't the court have to consider both sides' positions in order to make that kind of a determination? Did they do so in this case? Well, I do think that the... I mean, I think your friends point out, hey, Nike's position wasn't really, it just was sort of your position. They don't agree. Is it more needed? The special master talked about the likelihood of confusion factors, talked about the party's position, but I think the primary basis on which the district court found that this was substantive strength was not that species of substantive strength, which is one party has so much more proof than the other. It was the blameworthiness aspect. That is to say, even if two parties have a story to tell about what happened, and they both have a story to tell that could survive summary judgment, if the story that the jury finds is egregious misconduct, is willful, is enough to get punitive damages, that that is a different way you can get substantive strength. And I think you see that in the language of Securicom I talked about earlier. I think that Octane Fitness doesn't cabin that at all. And then in Fairwind, this court specifically said that blameworthiness, citing Securicom, is now a way that you can satisfy either of the prongs of Octane Fitness, and blameworthiness, that's willfulness. Earlier in the prior case, you said, is there any indication that Congress wanted such and such? Here, in the legislative history, Congress specifically called out of the statute, called out willfulness as an example of the kind of exceptional case that it was thinking about. So the committee report says that the remedy should be available. Yes. And I take that to mean they made it available. The question is, does it? Are you entitled to it? Yeah. I don't know that I read the committee report as far as you did in the brief. Well, all I'm saying there is it should be available, right? And we're not taking the position that willfulness automatically entitles you to attorney's fees, but that it creates the possibility in a judge's discretion. I think that's what this court's remand instructions were. Said, explain to us if you relied on willfulness, in fact, rather than you were relying on these three impermissible policy considerations. That's what the judge did. He said this was an important consideration. He said punitive damages was an important consideration. And he enthusiastically endorsed the special master's report, former Pasadena Supreme Court Justice, on these points. Thank you. Thank you. We'll hear a rebuttal. Your Honors, as this court and the Supreme Court have repeatedly held, there is no deference to a district court's discretion when that exercise of discretion is based on legal errors and clear factual errors, all of which we've explained in our briefs. On willfulness, it is a legal error to treat willfulness as a standalone consideration in the exceptional case inquiry. This court specifically held in Fairwind Sailing that you need to show that the case is exceptional with respect to litigation positions or litigation tactics, 764 at 3815. And that tracks the Supreme Court's holding in Octane Fitness where they said an exceptional case is a rare uncommon one that stands out with respect to the substantive strength of the positions or unreasonable litigation conduct. Therefore, willfulness can potentially be relevant if it bears on litigation positions or litigation tactics. And we've demonstrated that here, the willfulness question was, at worst for us, close. And this court confirmed that in its prior decision. Your Honors, on the clear factual errors, a number of the things that counsel said are simply not correct with the alleged Kill Law in Texas business statement. It wasn't undisputed. And if you look at page A647 in Mr. Nathan's offer of proof, he never said that the attorney had said anything about litigation costs. And I heard a lot about Kill Law in Texas business with litigation costs. That wasn't even in the uncorroborated, undocumented, uncross-examined offer of proof. And Your Honors, all of that was before the District Court in March 2022, when it made its original determination twice at page A829 and page A833 that Nike litigated the case vigorously but not unreasonably. And Your Honors, on the motion to compel, counsel did not correctly state the record when he said that the judge was considering sanctioning Nike for that conduct and then Nike filed the sanctions motion. One, you see at page A350, there's no mention of potentially sanctioning Nike. Rather, the District Court mentioned sanctions and asking for a supplemental briefing on Nike's sanctions motion that Nike had filed two months before. Both the District Court and counsel got that fact wrong. But if there's one page of the record,  that encapsulates the problem with the District Court's decision and Law in Texas's arguments, it is page A239, which is Special Master Jeske's report and recommendation on the discovery issues. Your Honor, this R&R addressed only Law in Texas discovery deficiencies and Nike prevailed entirely or partly on all issues except for the litigation funding privilege. In resolving the biggest dispute in Nike's favor, which was about whether Law in Texas needed to produce documents going back to 2006, the Jeske R&R expressly found, and I quote, there is nothing in the record to suggest that Nike is merely seeking to raise Law in Texas's discovery costs. Any burden on Law in Texas, quote, has not been shown to be disproportional to the amount in controversy or unduly burdensome. Quote, Law in Texas chose to initiate this action and must comply with its discovery obligations. So what you had here is Law in Texas choosing to bring a case against Nike, seeking over $100 million in damages, asserting three registrations, one of which was later dropped, asserting 14 different types of state law claims, 13 of which were later dismissed or dropped, asserting counterfeiting claims, seeking tens of millions of dollars in statutory damages, but district court dismissed those and this court affirmed. And then throughout the litigation, your honors, the district court consistently praised the conduct of Nike and its counsel and also the strength of Nike's positions. And then in March, 2022, may I conclude? Go ahead, you can finish your sentence. In March, 2022, when all of this was before the district court, the district court specifically found that Nike's conduct was not unreasonable. All that Nike is asking for, your honors, is a reasonable application of the correct legal standard to facts that are adequately supported by the record. Nike did not get that from the district court the first time. Nike did not get that from the district court the second time either and therefore, the ruling should be reversed. Thank you, your honors. Thank you, counsel. Okay, thank you, counsel. We'll take the case under advisement.